## DANIEL W. TAYLOR *v.* JOB H. JACKSON.

A book or paper produced in court on notice from the other side, under the statute and the order of the court, proves itself without evidence if there be no subscribing witness to it, or if there be and both parties claim or take title or interests under it; but if the party producing it claims or takes no title or interests under it, and there is a subscribing witness to it, he must be called to prove the execution of it, as in other cases.

An action of *indebitatus assumpsit* will lie at the suit of a subscriber to the capital stock of an incorporated manufacturing company, against another who had paid his stock subscription in full, upon the substantial performance by him of a verbal agreement between them that the stock certificate of the former, when made out for him, should be delivered to the latter and held by him as trustee for the company until his subscription for the stock had been paid in full, on his paying in full for the same, notwithstanding they entered into a further agreement, under their hands and seals, that the former would sell and transfer the said certificate and the shares of stock therein mentioned immediately on his ceasing to be an employee of the company to the latter at its par value, and who thereby agreed to buy the same at that rate, and which the latter transferred to the company itself eight days before the former ceased to be an employee of it. But the action would not lie on a part payment of the stock subscription by the former, however large, as it was not a substantial performance of either agreement prevented by the latter; and, besides, it could be of no benefit or advantage to the latter individually, whatever it might have been to the company to which it was paid.

THIS was an action of *assumpsit* on a part performance of a written agreement, signed and sealed by the parties respectively, on the back of a certificate for one hundred shares of the capital stock of the Jackson & Sharp Company, as follows : It is hereby agreed between Daniel W. Taylor, the holder of this certificate and the shares of stock therein mentioned, and Job H. Jackson, that in the event of the said Daniel W. Taylor's ceasing to be an employee of the Jackson & Sharp Company from any cause whatever, he or his personal representatives shall immediately sell and transfer the said stock to the said Job H. Jackson, his heirs or assigns, at its par value, and the said Job H. Jackson, for himself, his heirs and assigns, hereby agrees to buy the same at said rate.   And in the event of the said Daniel W. Taylor's desiring at any time to sell said stock, it shall be first offered to the said Job H. Jackson, his heirs or assigns, at its par value, and the said Job H. Jackson, his heirs or assigns, shall have the privilege and option of buying it at that rate.   Dated October 1st, 1870.

The counsel for the plaintiff offered in evidence the act of the legislature incorporating the Jackson & Sharp Company, showing the corporators of it to be Job H. Jackson, Jacob F. Sharp, and Daniel W. Taylor, and the minutes of the organization of it, when the first named became the president, the second the secretary, and the third the treasurer of it, and also the stock-book of the company to show that the certificate for one hundred shares of stock in it had been issued to the plaintiff ; but though one of the stubs in it showed that such a certificate of stock with the name of the plaintiff written on the stub had been severed and detached from it and from the stock-book, there was no receipt of it by the plaintiff indorsed on the stub, as appeared on all the stubs so remaining in it from which the certificates had likewise been severed and detached, each of which had indorsed upon it the receipt of the certificate by the stockholder to whom it had been issued and delivered.

*Harrington*, for the defendant, on that ground objected that the book was not admissible in evidence to prove the delivery of such a certificate of stock by the company to the plaintiff, for

which purpose he had been notified by the counsel on the other side to produce the stock-book of the company, as it proved no such issue and delivery of it to him, and he alleged that the certificate severed and detached from the book and the stub referred to never had been issued and delivered to him.

*Spruance*, for the plaintiff: This book is here in obedience to the order of the court under the statute and on notice from our side to produce certain books of the company, and this among them, on the trial of the cause, and it was ruled in a case tried here at the last term that a book so called for from the other side and produced proves itself without any further evidence.

*Comegys, C. J.:* Where there is no subscribing witness to a paper called for from the other side, or where there is a subscribing witness to it and it appears that both parties claim or take title or a valuable interest in or under it, such is the rule of law and evidence in regard to it. But where the party producing it claims or takes no title or interest under it, and there is a subscribing witness to it, he must be called to prove the execution of it, as in other cases. 1 *Whart. Ev., sec.* 156. Objection overruled.

*Spruance* next offered in evidence the written agreement between the parties on the back of the certificate of stock in question, which had also been produced under the notice to the other side.

*Harrington* objected to its being admitted in evidence until the formal proof of its execution had been made, as it was under the hands and seals of the parties, and was in the presence of a subscribing witness.

*Spruance:* That is not necessary in this case, as the certificate of stock and the agreement which is written and executed on the back of it has been produced on the other side, pursuant to our notice and in obedience to the order of the court under the statute, which in effect admits it to be genuine and dispenses

with the necessity of any proof on our part of its execution. 2 *T. R.* 41; 3 *Taunt.* 60; *Bell* v. *Chaytor*, 47 *E. C. L. Rep.* 162; *Bradshaw* v. *Bennett*, 24 *E. C. L. Rep.* 205.

Without waiting for the decision of the court on the question, he then offered in evidence the stock transfer book of the company, also produced by the other side under the notice, to prove the transfer of the certificate for the one hundred shares of stock standing in the name of the plaintiff by Job H. Jackson to the company on the 31st day of October, 1873.

*Harrington* objected to its admissibility in evidence before proof had been made of Job H. Jackson's authority as attorney in fact for the plaintiff to make such transfer of it.

*Spruance* then called and proved by the subscribing witness to the agreement on the back of the certificate, his signature to it as such witness, and that he saw the parties sign and execute it.

The agreement was then offered and read in evidence. The certificate of stock itself was then offered again in evidence, when Harrington again raised his objection to the admissibility of it.

*The Court*, however, admitted it.

The stock-book of the company was also then again offered in evidence and though again objected to was also admitted, from which it appeared that the first dividend declared on the stock of the company, the capital of which was two hundred thousand dollars divided into two thousand shares of one hundred dollars each, was one of twenty-five per cent. on the par value of the stock in the month of October, 1870, and that the sum of two thousand five hundred dollars out of it was carried to the credit of the plaintiff on the books of the company on his subscription to a hundred shares of stock in it, a resolution or order having been adopted at a meeting of the company, held before that time, that dividends declared by it should be applied to payment of stock subscribed for by the plaintiff until the same should be paid for in full, and it was proved that it was not until the 31st day of December, 1870, that the certificate

of stock in question was made out and severed from the stock-book, and the agreement between the parties was written and executed on the back of it, although they bore date the 1st day of October, 1870, the former being the true date on which certificates were issued to other subscribers and antedated in the same manner. The next dividend was declared in April, 1871, out of which a further credit was entered on the books of the company to the plaintiff's subscription to the stock of it to the amount of his dividend on that occasion of one thousand dollars. The next was declared in April, 1872, out of which a credit was entered on the books of the company to the plaintiff's subscription for stock to the amount of his dividend on that occasion of one thousand five hundred dollars, and the next was in April, 1873, when the further sum of two thousand dollars was in like manner entered to his credit on the books of the company, amounting in all to seven thousand dollars so entered to his credit up to the date last mentioned. Afterward at a meeting of the stockholders, held on the 13th day of May, 1873, on a motion seconded by the plaintiff, a resolution was adopted declaring a division of surplus, but that it should be divisible only among such stockholders as had paid in full for their stock, and they might take it in money or in increased shares of stock in the company at their option, and upon which, had the plaintiff's subscription for the hundred shares in question been paid for in full, he would have been entitled to a further dividend of three thousand six hundred and fifty dollars. The balance due upon his subscription with interest added was then four thousand dollars. On the 8th day of November, 1873, the plaintiff ceased to be an employee of the company, the defendant having eight days before that transferred the certificate of stock in question to the company on the books of it. The plaintiff here rested his case.

*Harrington* submitted a motion for a nonsuit because the plaintiff had failed to prove that he was the lawful owner of the certificate of stock in question when he ceased to be an employee of the company, or that he did not tender it to the defendant then or at any other time, and that being a special

written contract executory in its character up to that time he was bound to prove, but had failed to do so, that he had executed and performed it on his part, or had in part performed it and been prevented from performing it entirely by the defendant ; and it being under seal and a special contract proved by him, if it had been in part performed by him and he had been prevented from performing it fully on his part by the defendant, he should have sued in an action of covenant upon it, and that no action of special or *indebitatus assumpsit* would lie in the case until he had completely performed it on his part. *Rankin* v. *Darnell,* 11 *B. Mon.* 30 ; *Young* v. *Preston,* 4 *Cranch.* 239 ; *Glazebrook* v. *Woodrow,* 8 *T. R.* 366 ; *Hulle* v. *Heightman,* 2 *East.* 145 ; 3 *Phil. Ev.* 410.

*Nields,* for the plaintiff : The action was not on the contract itself, but having proved so far a part performance, and a very large and material part performance of it by the plaintiff, and that he was prevented by the defendant from performing it completely, he was entitled to recover for that part performance of it, or, in other words, to recover back the large amount of money paid by him under it in the way of damages in an action of *indebitatus assumpsit.*   *Bul. N. P.* 130 ; *Sickels* v. *Pattison,* 14 *Wend.* 257 ; *Linningsdale* v. *Livingston,* 10 *Johns.* 35.

*Spruance :* The cases cited on the other side were on special contracts for work and labor.   The general principle well settled at this day, however, was this : where there has been a part performance of a contract which has been of benefit to the other party, the party partially performing it may recover in this form of action a reasonable compensation for any advantage or benefit derived from it by the other party over and above any loss or damage he may have sustained by the failure of the other party to perform it entirely.

But after the argument on the motion had been concluded the counsel for the plaintiff declined to take a nonsuit.

The counsel for the defendant then proceeded with their testimony, when further evidence was elicited as follows : That the plaintiff was one of the directors of the company and seconded

the motion on which the resolution was adopted on the 30th day of October, 1873, that the division of surplus profits declared on that day should be divided among such stockholders only as had paid up in full their subscriptions to the stock of the company, and if he were credited with the amount of that also it would still leave a balance due from him on his subscription to the stock of seven hundred and ninety-two dollars ; that the plaintiff had been the treasurer of the company during the whole time before mentioned and referred to at an annual salary of two thousand dollars, and that his own account kept on the books of it showed that he was further indebted to the company for over-drafts against it to the amount of six thousand nine hundred and twenty-five dollars and twenty-one cents, and that he had since paid to the company five thousand five hundred dollars, which had been credited by the company to that indebtedness. It was also proved that when the certificate of stock for the one hundred shares was made out for the plaintiff and was detached from the stock-book it was not delivered to him, but by a verbal understanding and arrangement between him and the defendant the latter was to hold it as trustee or agent of the company until the plaintiff's subscription for the stock should be fully paid to the company ; and that the certificate of stock never had been delivered to him, but had been retained in the possession of the defendant until he transferred it to the company as before stated.

The case was then argued at length on the evidence before the jury by the counsel for the parties.

*The Court, Comegys, C. J., charged the jury,* in substance, after stating that it was an action of *assumpsit* brought by Daniel W. Taylor, the plaintiff, against Job H. Jackson, the defendant, for the performance by him, either in whole or in part, as he alleged, of a written agreement between them dated October 1st, 1870, and signed and sealed by them respectively upon the back of a certificate for one hundred shares of stock in the Jackson & Sharp Company subscribed for by the plaintiff (the original of which was in evidence before the jury), by which he promised the defendant that in the event of his ceasing to be

an employee of the said company, in whose service he then was, from any cause whatsoever, he, the holder of that certificate and the shares of stock therein mentioned or his personal representative, would immediately sell and transfer the said stock to the defendant, his heirs or assigns, at its par value, and the defendant, for himself, his heirs and assigns, promised him to buy the same at that rate. And in the event of his desiring at any time to sell said stock it should be first offered to the defendant, his heirs or assigns, at its par value, and said defendant, his heirs and assigns, should have the privilege and option of buying the same at that rate. The agreement was between them personally and individually, and the action was against the defendant personally and individually also, to recover damages from him for a complete performance of its stipulations on his part, or if not completely by him, then for a very considerable and costly part performance of it by him upon the ground that he was prevented from performing it entirely by the defendant, as he alleges.

The first five counts in the declaration were special counts in *assumpsit*, the next four were for goods, wares, and merchandise and stock sold and delivered, for stock bargained and sold, and the common money counts in *indebitatus assumpsit;* but on the trial the plaintiff abandoned the first five and rested his case on the last counts only. And then, after observing that the evidence in the case consisted almost exclusively of that which was presented in the books of the company produced by the defendant on the demand of the plaintiff and the order of the court, and which had not been impugned or contradicted by any evidence produced on the other side, he added that there were certain undisputed facts proved in the case to which he would recall the attention of the jury. The Jackson & Sharp Company, now doing business on a large scale in the city of Wilmington as builders of railroad cars, was created a corporation by the legislature of this State on the 24th day of February, 1869, Job H. Jackson, the defendant in this suit, his partner, Jacob F. Sharp, and the plaintiff, Daniel W. Taylor, being the corporators or persons incorporated by the said act under the above corporate name. The company was duly organized in

pursuance of the act and entered upon the prosecution of its business with a chartered capital of two hundred thousand dollars divided into shares of one hundred dollars each, but with authority given by the charter to the directors of it to increase the capital stock to five hundred thousand dollars on each stockholder being duly notified of the proposed increase by mail or in person, and each to have the privilege of taking their *pro rata* shares of such issue, which must be accepted within ten days from the date of notice. Stock, however, not fully paid up, or upon which any assessments remained unpaid, not to be entitled to any share of the increase; and one hundred of which shares first above mentioned were subscribed for by the plaintiff in this action, the residue of them being taken by the defendant in it, by the said Jacob F. Sharp, and then or afterward by other persons.

There was nothing paid on the subscription to the stock by the plaintiff at the time it was made by him, and it appeared by the books of the company, which were in evidence before them, that no dividend was declared by it until about the 1st of October, 1870, when one of twenty-five per cent. of the par value of the stock was declared, and the sum of two thousand five hundred dollars was carried to the credit of the plaintiff on the said books, a resolution or order having been previously adopted at a meeting of the company that subscriptions to stock might be paid for by crediting them with the dividends on them.

So far all is certain and undisputed, but now we come to the consideration of the facts which constituted the case before us, and about which there was more or less controversy between the parties. There is no doubt, however, that a certificate for this one hundred shares of stock in the company was made out in the name of the plaintiff in the form of the stock certificates then issued to the other subscribers, and though it bore date on the 1st of October, 1870, yet it has been proved by the uncontradicted testimony of two witnesses for the plaintiff, Mr. Black and Mr. Auchincloss, that it was not in fact made out until the 31st day of December in that year, at which time it was reasonable to presume the certificates were issued and delivered to the other subscribers, for all of the certificates bear the same date, that of

October 1st, 1870. Had the stock certificate for the one hundred shares been delivered to the plaintiff by the company or its agents, the plaintiff would have been the legal owner thereof; but it was further proved by the same witnesses that it was not delivered to him, on the contrary, that by an arrangement between the plaintiff and defendant, and with the consent of the plaintiff, it was delivered to the defendant as trustee or agent of the company, to be retained and held as security for the payment of the balance of the subscription price for the shares of stock stated in it, which was then seven thousand five hundred dollars, and there being no proof to the contrary of what had just been mentioned, the jury were warranted in taking it to be true that the certificate, notwithstanding its date, was in fact made out on the 31st day of December, 1870. On that same day it was also proved by the subscribing witness to it, Mr. Black, before mentioned, that the agreement in writing already more fully and particularly recited, and in evidence before the jury along with the certificate, was entered into between the plaintiff and defendant, by which it was stipulated in substance that whenever the plaintiff ceased to be an employee of the company he should sell and transfer the one hundred shares of stock subscribed for by him, and represented by the said certificate to the defendant at the subscription price of one hundred dollars per share, and by the same instrument the defendant covenanted that he would then buy the stock from him at that price. A little more than two years and eight months after that the plaintiff ceased to be an employee of the company, on the 8th day of November, 1873. Had he then been in possession of the shares of stock subscribed for by him, or rather of the certificate representing them, it would have been in his power to tender himself ready to sell and transfer the said shares of stock therein mentioned to the defendant according to the terms of the agreement, and the latter would then have been bound to accept it and pay the price agreed upon for it, or he would have rendered himself liable to an action of covenant thereon at the suit of the plaintiff for refusing or failing to do so, in which case he would have been entitled to recover damages to the amount of the price agreed upon to be paid for the stock, because the company, by the delivery of the certificate

15

of stock to him, had it been delivered, would have waived all right or claim to hold the stock represented by it and elected to rely on his personal responsibility solely for the unpaid balance of the subscription price for it. It was, therefore, evident that there was no such delivery of the stock in question to the plaintiff as constituted him the owner of it, so as to enable him to sell and transfer it to the defendant at the time when he ceased to be an employee of the company, if it had not then been paid for in full by him.

. It appeared by the books of the company, called for from the other side and put in evidence by the plaintiff, and which fur-. nished the only proof that had been offered in regard to the matter, that at the time when this agreement was entered into between the parties only two thousand five hundred dollars had been paid by the plaintiff on his subscription for the stock, and that by crediting it with his share of the first dividend declared by the company, a balance of seven thousand five hundred dollars (to say nothing of interest) then remained to be paid upon it. During the first part of the trial the action had been prosecuted to recover from the defendant by virtue of the agreement on the special counts in the declaration, upon the ground and claim alleged by him that the defendant had immediately disposed of the stock and certificate by transferring it to the company without the authority or consent of the plaintiff on his ceasing to be an employee of it, and had thereby put it out of the power of the plaintiff, and dispensed with any necessity on his part, to offer or tender a transfer of it to the defendant; but the form of action adopted by the plaintiff precluding him from recovering on the agreement itself, he abandoned his claim in that respect early in the trial and demanded a verdict at your hands on the common *indebitatus* counts contained in it for goods, wares, merchandise, and stock sold and delivered, for stock bargained and sold, and the common money counts; and this latter demand for a verdict is based upon the allegation on his part that the defendant had appropriated to his own use the stock represented by the certificate made out in his name and virtually belonging to him, and therefore he should account to him in this action for the value of it. If the

jury should find upon the evidence before them in the case that
the plaintiff was then the owner of the shares of stock in ques-
tion, and that the defendant appropriated them to his own use, the
plaintiff would be entitled to recover the value of them estimated
at one hundred dollars per share, with interest thereon from the
time of the appropriation, as for so much money had and re-
ceived by the defendant to and for the use of the plaintiff; but
if, on the contrary, they should not be able to find on the evi-
dence before them that the plaintiff had then paid in full for
the stock in some manner, by which alone he could then have
become the unqualified owner of it, and that the defendant did
so appropriate it to his own use, then the plaintiff would not
be entitled to recover.

But let us now inquire and consider what is the evidence in
the case with reference to the two important points presented in
it, that is to say, the plaintiff's payments for the stock and the
right claimed by him to possess himself of it, and the appro-
priation of it by the defendant to his own use as alleged
by the plaintiff. And here we must repeat an observation
similar to one before made by us that there was no proof what-
ever in the case, outside of the books of the company put in
evidence, that the plaintiff ever made any payment directly or
indirectly for the stock, and there was no contention or pre-
tension even that he ever made any payment on it not credited
in the said books. And what did they show? That the fol-
lowing payments had been made by way of crediting his sub-
scription with the dividends earned on the shares of stock rep-
resented by the certificate in the plaintiff's name and declared
from time to time by the company :

| | |
|---|---:|
| 1870, October dividend, . . . . . . . . . | $2,500 |
| 1871, April dividend, . . . . . . . . | 1,000 |
| 1872, April dividend, . . . . . . . . | 1,500 |
| 1873, April dividend, . . . . . . . . | 2,000 |
| In all, . . . . . . | $7,000 |

Taking the interest on the stock purchase price into the
account and adding it to the price of the one hundred shares of

stock (ten thousand dollars), there was due from the plaintiff to the company on account of his stock when the last of the foregoing dividends was declared and credited to it by the company, per the debit side of the account, the sum of eleven thousand three hundred and thirteen dollars and forty cents, which was subject to a deduction of seven thousand dollars for dividends credited, and thus leaving a balance to be paid in some manner before the subscription price of the stock could be discharged of four thousand three hundred and thirteen dollars and forty cents. To entitle the plaintiff to have a delivery to him of the stock certificate in question so as to be able to offer or tender a transfer of it to the defendant pursuant to the terms of the agreement on his part, he was bound to show by proof satisfactory to the jury positive in its character, and not by conjecture, inference, or presumption merely, how to get rid of that balance against him. Had he done it? That was one of the questions on which the right of the plaintiff to recover depended. It was not pretended by his counsel that he had done so other than in one of two ways—first, by reason of a certain division or distribution of surplus earnings of the company, as they were denominated, amounting in the aggregate to seventy-three thousand three hundred and seventy dollars, among the stockholders, made by the directors on the 30th day of October, 1873, the plaintiff's share of which they contended was three thousand six hundred and sixty-eight dollars and fifty cents, and secondly, by his share of other profits or gains which they assumed in the absence of any proof whatever as to that particular matter accrued to the company between the 31st day of March preceding and that date, and which share they estimated by conjecture merely to have amounted to one thousand dollars distributable to him on account of his stock. But with respect to the first he had to remind the jury that it was in evidence before them and not controverted that by a resolution adopted by the stockholders of the company at a meeting held on the 13th day of May, 1873, which the plaintiff attended and where he seconded the motion for its adoption, it was determined in substance that a dividend of twenty per cent. of the par value of the stock of the company should

be declared, and which should be payable to all the stock, but as to the residue or surplus of gains or earnings, they adopted the recommendation of the president of the company in his report submitted to the meeting, that it should be divisible among those members or shareholders only whose stock had been paid for in full, and they might take it in money or in increased shares of stock at their election. It was adopted with the marked approbation and consent of the plaintiff, and whether that was necessary or not to bind and conclude him in regard to the matter, if he then had not paid in full for his stock, he neither then nor at any time afterward could claim any benefit whatever from that residue or surplus either as a further payment or credit on his stock or otherwise if he had not paid for it in full at that time. As to the second way or source of payment suggested by the counsel, he had again to remind the jury that there was no proof whatever before them that any other dividend was declared or made of profits of any sort by the company from the date of the surplus division before mentioned up to the time when the plaintiff ceased to be an employee of it. Nor had they before them any evidence that the company had declared any dividends since that time; and in the absence of all such proof the plaintiff could have no right to claim any credit on his stock account on either of the grounds suggested by his counsel and which he had just stated.

But to return to the original question, has the plaintiff shown by the evidence in the case, and upon the facts proved and un-contradicted to which he had already referred, that he was entitled to the possession of the certificate of stock in question by reason of having paid for it when he ceased to be an employee of the company? The jury must so find, or he could not recover against Job H. Jackson, the defendant, whatever remedy, if any, he might have against others, of which it did not become his duty then to speak. He had stated all that had been suggested on behalf of the plaintiff, except the payment made by him to the company of the sum of five thousand five hundred dollars, which was applied by the company to make good his overdrafts while he was treasurer of it, of which the evidence was also be-

fore them and not contradicted, and which it had a right to so apply under the facts and circumstances proved in the case.

But the plaintiff, by his counsel, had further contended that whether his stock subscription for the one hundred shares had been fully paid for or not by his dividends, he was still entitled to recover, because the defendant, as he alleged, had appropriated the same to his use by his transfer of it to the company without his authority and consent, which was proved and not denied on the other side, and that the defendant had thus become bound in law to account to him under one or the other of the counts in the declaration for goods sold and delivered, for goods bargained and sold, or for money had and received by him to and for the use of the plaintiff, for the value of it at the time of the appropriation, on the ground that he had thereby prevented him from paying in full for it, after having paid such a large amount upon it, and also from selling and transferring the stock to him at its par value as soon as he ceased to be an employee of the company, pursuant to the stipulations of the agreement on his part, and that such value of it in case of his recovery on either of these counts was to be ascertained and established by whatever amount of money the jury might find to have been paid in any manner, directly or indirectly, by the plaintiff on his subscription for the one hundred shares of stock up to the time when he ceased to be an employee of the company, or, in other words, that if they should find that he had not paid in full for it, then under the facts and circumstances stated, and not disputed, and on the common *indebitatus assumpsit* counts referred to, he would be entitled to recover for his part performance of the agreement in paying such a large amount of money on his subscription for the stock while the agreement was yet existing and executory between them, with the intention of paying in full for it and completely performing the agreement on his part pursuant to the terms of it by the sale and transfer of it to the defendant whenever he should be willing to accept the stipulated price, or whenever he should cease for any cause whatever to be an employee of the company, and that the proper measure of the damages in the case of such a recovery would be the aggregate amount which the jury might find that he had

paid on the stock from time to time, either directly or indirectly, though less than the full amount to be paid on it, with interest thereon from the time when the defendant by the wrongful act before mentioned put it out of his power to perform the agreement entirely on his part, according to the strict and literal terms of it.

But the evidence in the case was that by an arrangement and understanding between the parties and with the express consent of the plaintiff, the certificate of stock when it was made out was delivered to the defendant as the trustee or agent of the company, to be held and retained by him for its security until the stock represented by it should be paid for in full by the plaintiff, there then having been but two thousand five hundred dollars paid on the subscription price of it, which was ten thousand dollars, and it was then the agreement in question was entered into between them and was written and executed on the back of it. There was no proof in the case that the plaintiff ever offered at any time, either before or after he ceased to be an employee of the company, to sell and transfer the stock represented by it to the defendant at the price stipulated in the agreement or at any other price, and if it was not paid for in full when he afterward ceased to be an employee of the company, then there was no evidence in the case to support the count for goods sold and delivered by the plaintiff to the defendant, or the count for goods bargained and sold by the plaintiff to the defendant, for the stock had not yet been sold and delivered, or even been bargained and sold by the former to the latter, for it was at most but a bargain to sell at a future day without being perfected by a sale afterward. And as by the arrangement and understanding between them, the defendant, who was then the president of the company to whom the stock certificate was then delivered as its trustee or agent, to be retained by him for its security until the stock should afterward be paid for in full by the plaintiff, if it was not paid for in full when he ceased to be an employee of it, then the transfer of the certificate and the stock represented by it by the defendant to the company as the trustee or agent of it under the arrangement and understanding between the parties by which he thus became

the holder or bailee of it, could not constitute in contemplation of law an appropriation of the certificate or the stock represented by it to his own use, nor a sale of it by him to the company, for he received no money or other valuable consideration for the transfer of it to the company, and as he neither appropriated it to his own use by so transferring it, nor received any money for such transfer of it, there was no evidence in the case to support the remaining *indebitatus asssumpsit* count in the declaration for money had and received by the defendant to and for the use of the plaintiff; and therefore without any evidence before the jury to support them, the plaintiff could not recover on either of the three last counts referred to in the declaration.

It was also contended by the counsel for the plaintiff that by the transfer of the stock to the company the defendant had put it out of his power to make or tender a transfer of it to him, and had thereby prevented him from performing the agreement entirely on his part, but the truth and validity of that statement depended upon the same question before suggested, and the all-important question to be determined by the jury in the case upon the evidence before them, and that was, had the plaintiff complied with his arrangement and understanding with the defendant, who was to hold the certificate of stock as the trustee or agent of the company until it had been paid for in full by the plaintiff by having paid for it in full by the time he ceased to be an employee of it ? If he had not, then he was precluded by it from claiming or demanding the possession of the certificate of stock from the defendant or from claiming the right to sell and transfer it to the defendant or to any other person. Something was also said by the learned counsel for the plaintiff about his having been a director and recognized by the other directors and by all the members of the corporation as a stockholder in the company from the time of its organization until he ceased to be an employee of it, but how far that recognition might conclude the company and prevent it from questioning whether he was so or not in law or in fact, it could not affect this case, because it was not a suit by him against the company to recover compensation from it for any loss or injury or injustice he might have sustained at the hands of the company

itself by reason of anything done by it or by its board of direc-
tors in relation to the matter out of which the suit had arisen,
but it was an action brought by the plaintiff against the defend-
ant personally, as he had before remarked, to recover damages for
the alleged breach of an agreement between them individually, the
nature and terms of which were by that time well known to the
jury, and to which neither the company nor any other person was
a party or could be, as the agreement was wholly between the plain-
tiff and defendant as individuals, and none but themselves were
bound by it or could commit a breach of it on either side; and
the fact that the defendant was the president of the company
when the agreement was entered into between them and when the
breach of it occurred on his part, as alleged by the plaintiff,
could not change or affect the character of it in the least in that
respect. It was not, however, an action of covenant founded
directly on the written agreement executed under their hands
and seals, but an action of *assumpsit* which the counsel for the
plaintiff contended would lie at the suit of the plaintiff against
the defendant under the facts and circumstances proved in the
case, notwithstanding the agreement was in writing and under
seal, provided the jury should be satisfied from the evidence
that the plaintiff had in any manner, either directly or indirectly,
paid the company in full for the hundred shares of stock sub-
scribed for by him, or that he had been prevented from paying for
it in full, after having paid seven thousand five hundred dollars
on it (which was admitted), by the act of the defendant done
without his authority or consent, and that he had thus been pre-
vented in either case by the defendant from completely perform-
ing the written agreement between them pursuant to all the
stipulations of it on his part, by either failing to offer to sell and
transfer the stock to him at its par value, in case the jury should
be satisfied from the evidence that he had paid for it in full
when he ceased to be an employee of the company, or if he had
not, that he still had been prevented from doing so and from
making the like offer to sell and transfer the certificate of stock
to him at its par value when he ceased to be an employee of the
company, by the act of the defendant in transferring the certifi-
cate of stock to the company without his authority or consent;

and in the event that the jury should be so satisfied in either aspect of the case as they had it thus presented to them, the plaintiff would be entitled to recover against the defendant in this action such damages as they might consider just and reasonable under all the facts and circumstances proved, because of his bad faith and the virtual breach of the agreement on his part by so doing.

Should you be of opinion that the plaintiff is entitled to recover on either of the grounds last stated, the measure of his damages should not be less than the amount which they should find had been paid by him in the aggregate from time to time to the company on his stock subscription, with interest thereon from the date of such payment added to it. And as it was not an action of covenant founded directly on the written agreement itself, but an action of *assumpsit* of the scope and character which he had just described according to the contention of the counsel for the plaintiff, it was, of course, conceded by them, by implication at least if not expressly, that the cause of action in the case consisted of the alleged breach of the two separate and distinct agreements entered into between the parties on the same day, the first being a parol or verbal agreement merely, by which the plaintiff consented in substance that the certificate made out in his name for the hundred shares of stock subscribed for by him should be delivered to the defendant to be held and retained by him as the trustee or agent of the company until the plaintiff had paid in full for his subscription for the stock as security for the full payment of the same by the plaintiff to the company; and the second being the agreement between them in writing under their hands and seals, and written and executed by them on the back of the stock certificate for the said stock so delivered to and retained in the hands of the defendant under and by virtue of the said first mentioned and parol agreement, the second or latter under seal, executed the same day, containing the agreement between them that in the event of the plaintiff's ceasing to be an employee of the company from any cause whatever that he should immediately sell and transfer the said stock to the defendant at its par value, and that the defendant would buy the same at the said rate;

and in the event of the plaintiff's desiring at any time to sell said stock it should be first offered to the defendant at its par value, and he should have the privilege and option of buying it at that rate. For the only ground on which the counsel for the plaintiff have presented his right to recover in the action is based on his alternative claim for damages before mentioned, each of which was incidentally or indirectly founded on the two agreements between the parties, joined together and substantially treated and considered as one agreement by them for the purposes of the suit as contended for by them, and it had been defended on the same ground by the counsel for the defendant through the trial of the case; the action, however, was not founded directly or exclusively on either agreement in the plaintiff's alternative claim for damages on the ground that he had completely performed either of them in accordance with the strict and literal terms and stipulations of either of them on his part, but on the ground that if he had paid in full for the stock on the first agreement, he had been prevented by the defendant from selling and transferring it to him under the second agreement in the manner before stated when he ceased to be an employee of the company, or if, after having paid a very large portion of the price of it to the company, he was prevented by the plaintiff from paying the balance of it to the company and selling and transferring the stock to him at that time as before mentioned, he was entitled in either of those alternate events to maintain the action against the defendant and to recover damages to the amount before specified by him.

If he had succeeded in proving to the satisfaction of the jury by the evidence in the case that he had paid the company in full for the stock when he ceased to be an employee of it, then the defendant was not warranted or justified by the agreements between them in transferring the certificate and shares of stock mentioned in it to the company without his consent and without giving him a reasonable time to offer to sell and transfer the same to him at its par value, although the stipulation of the agreement was that he was to sell and convey it to him at that price immediately on the occurrence, for such a substantial performance of the agreement by the plaintiff of having paid the

company in full for the stock by that time justly entitled him in this action, which in that respect was founded on the facts and circumstances, and to a certain extent on the equity and justice of the case, to reasonable time for selling and transferring, or for offering to sell and transfer it to the defendant at that price before the plaintiff could have any right to transfer it to the company immediately on that occurrence, or without giving him reasonable time to do so and without his knowledge and consent. Besides, by the first agreement by which the certificate and stock mentioned in it were with his consent delivered to the defendant to be held by him for the purpose stated until the stock should be paid for by the plaintiff, it was imported, of course, that they were to be delivered to him by the defendant as soon as that had been done, and if the plaintiff had not then sold and transferred the stock to him according to the second agreement he would have been liable to him in an action for refusing to do it. And, therefore, if such should be the finding of the jury after carefully considering all the evidence in the case, their verdict should be for the plaintiff, and the measure of his damages should be the full price, which was the par value of the one hundred shares of stock paid for by him in the company with interest upon it from the time it was paid in full by him. But if you should find that it had not been paid in full by him to the company, then the case stood on a different ground so far as the defendant was concerned, for in that case the plaintiff had not substantially complied with either of his agreements with him, even though they should find a large balance to his credit on the books of the company, after properly considering. and weighing everything in evidence for and against him according to the instructions already given them on the subject, because no part performance of such an agreement as a partial payment, however large, of his entire subscription price could be of any benefit or advantage to the defendant individually, whatever it might have been to the company, and therefore in that case their verdict should be for the defendant. The defendant had a verdict.